## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **LEROY NELSON,** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO. _____** |
| **v.** | § | |
| | § | |
| **EK REAL ESTATE SERVICES OF NY,** | § | |
| **LLC, ET AL. ,** | § | |
| *Defendants.* | § | |

### ORIGINAL COMPLAINT

Plaintiff **LEROY NELSON ("NELSON")** files this *Original Complaint* against the unauthorized, predatory lending tactics of Defendants **EK REAL ESTATE SERVICES, OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **CENTER STREET LENDING FUND IV SPE, LLC**, and seeks redress for, among other causes, multiple violations of the Truth In Lending Act, 15 U.S.C. §1601 et seq. (hereinafter TILA) and Federal Reserve Board of Regulation Z, 12 C.F.R. §226 promulgated pursuant thereto, and multiple violations of Texas Finance Code, including §§ 305.001, *et seq.*, and §§ 341.001, *et seq.,* and in support thereof would show the Court as follows:

### PARTIES

1.      Plaintiff **LEROY NELSON ("NELSON")** is a resident of Fort Bend County, Texas and is the person who owned the real property at issue in this suit.

2.      Defendant **EK REAL ESTATE SERVICES OF NY, LLC, an Affiliate of EASYKNOCK, INC. ("EK REAL ESTATE"),** is a foreign limited liability company organized and existing under the laws of the State of Delaware but, as of September 27, 2019, is authorized to do business in the State of Texas. **EK REAL ESTATE** conducted business in this state before

that time, including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. **EK REAL ESTATE's** principal office is located at 79 Madison Avenue, 5th Floor, New York, NY 10016, and it may be served with a copy of this *Original Complaint* by and through its registered agent for service, Corporation Services Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Travis County, Texas 78701.

3.      Defendant **EASYKNOCK, INC., ("EASYKNOCK")** is a foreign corporation organized and existing under the laws of Delaware whose principal office is 215 Park Avenue South, Suite 1713, New York, NY 10003. **EASYKNOCK** is the sole member of Defendant **EK REAL ESTATE**. **EASYKNOCK** regularly engages in business in Texas without registering with the Texas Secretary of State for the right to do business in Texas, including in connection with the transactions at issue in this lawsuit; thus, **EASYKNOCK** may be served through the Texas Secretary of State pursuant to FED. R. CIV. P. 4(h)(1)(A) and TEX. CIV. PRAC. & REM. CODE § 17.044, via US Mail: Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079, or via Overnight Delivery: Service of Process, Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

4.      Defendant **CENTER STREET LENDING FUND IV SPE, LLC ("CENTER STREET")** is a foreign corporation organized and existing under the laws of the State of Delaware but, as of October 23, 2014, is authorized to do business in the State of Texas. **CENTER STREET's** principal office is located at 18301 Von Karman Ave., #330, Irvine, California 92612, and it may be served with a copy of this *Original Complaint* by serving its registered agent for CSC, 211 E. 7th Street, Austin, Texas 78701.

## JURISDICTION

5.      Jurisdiction is proper in this Court for the violations of the Truth-In-Lending Act pursuant to 15 U S.C. §§ 1601, *et seq.*, and the Fair Debt Collection Act pursuant to 15 U S.C. §§ 1692, *et seq.*, as well as 28 U.S.C. §§ 1331 and 1337.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.  This Court has jurisdiction over the Texas state law claims under principles of pendent and ancillary jurisdiction.

6.      This Court has general personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **CENTER STREET** under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant has purposefully availed itself of the benefits of conducting business in Texas, each Defendant's contacts with Texas are continuous and systematic, and each Defendant can be considered essentially at home in Texas.  This Court also has specific personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **CENTER STREET** under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant purposefully directed its wrongful activities at Plaintiff Nelson, a resident of the forum, each Defendant's conduct caused, and Plaintiff Nelson's suit seeks redress for, harm caused by each of Defendant's wrongful actions which either took place inside of the forum and/or were purposefully directed at Plaintiff Nelson in the forum.

## VENUE

7.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) and Tex. Fin. Code § 349.401 since this case arises from a dispute concerning real property situated in Fort Bend County, Texas and because the Southern District of Texas, Houston Division, the judicial district

in which Fort Bend County sits, is a judicial district in which the underlying transactions and a substantial part of the events or omissions giving rise to the claims occurred.  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because, for venue purposes, each Defendant is deemed to reside in Fort Bend County, Texas since each Defendant is subject to the court's personal jurisdiction in this judicial district with respect to this civil action in question and, for venue purposes, all Defendants are deemed residents of the State in which the district is located.

## FACTS

8.      On or about September 17, 1999, Plaintiff **NELSON** purchased a house and the real property located at 16302 Lazy Ridge Rd., Houston, Texas 77053, more fully described as Lot Thirty-three (33), Block One (1), Green Valley Estates, Section 2, a subdivision or addition in Fort Bend County, Texas, according to the Map or Plat thereof recorded in Slide(s) 1348 A & B and amended under Slide(s) 1569 A & B of the Plat Records of Fort Bend County, Texas ("the Property").  *(See Exhibit "A" – Special Warranty Deed with Vendor's Lien to NELSON attached hereto and incorporated herein for all purposes.)*   **NELSON** resided at the Property prior to the transaction at issue in this dispute, and the Property continues to be his primary residence.  At the time of the transactions at issue in this dispute, the Property was designated as **NELSON's** residential homestead.

9.      In the Spring of 2018, **NELSON** had fallen upon difficult financial times. **NELSON** was making little more than minimum wage and he lacked any savings to cover his monthly expenses.  **NELSON** wanted to tap into the equity in his Property to help cover his expenses.  At that time, **NELSON** was unable to borrow money from a conventional financial institution because of bad credit, limited income, and the Property being his homestead.

4

10.     In April 2018, **NELSON** conducted an Internet search for potential, bad credit, no or low income, home equity lenders, to help him pay off some debts and cover his living expenses. Through this online search for a home equity lender, **NELSON** found an alternative lender on the Internet, Defendant **EASYKNOCK**, the sole Member of **EK REAL ESTATE**. Upon information and belief, **EASYKNOCK** used online target ad words to increase its visibility on searches for home equity lenders. **EASYKNOCK** markets itself in its Google Ads as offering "HOME REFINANCE [for folks with] BAD CREDIT—NO MINIMUM CREDIT REQUIREMENTS." **EASYKNOCK** was one of the first results to appear in **NELSON**'s internet search for home equity lenders, and, after conducting Internet searches, **NELSON** began seeing ads for **EASYKNOCK** on Facebook.

11.     As part of a series of follow-ups (via telephone calls and emails) with this potential home equity lender in April 2018, **EASYKNOCK** indicated to **NELSON** that it would loan him money based on a portion of the equity in his Property and the execution of a lease agreement. What **NELSON** didn't know at the time (and what Defendants failed to inform him) is that **EASYKNOCK**, as part of its purported equity loan transaction, planned to remove his name from the deed on his Property and place the deed to his Property entirely in the name of **EK REAL ESTATE**, its wholly owned subsidiary. This type of transaction is known as a "Sale-Leaseback," and it is highly disfavored in Texas, particularly when the transaction involves a Texas citizen's homestead. **EASYKNOCK** represented that the lease agreement would include an option to pay off **EASYKNOCK's** loan, which would be secured by a portion of **NELSON's** equity in his Property. **EASYKNOCK** also promised **NELSON** that he would retain the remaining equity in his Property—the equity difference between the Property's total market value and the amount of **EASYKNOCK's** secured funding.

5

12.     All communications concerning the transaction between **NELSON** were with **EASYKNOCK** and its employees or representatives.  All material sent to **NELSON** was sent by **EASYKNOCK,** the sole Member to Defendant **EK REAL ESTATE**.

13.     In their online advertising and during several calls and email communications in April 2018 with representatives of **EASYKNOCK,** Defendants **EASYKNOCK** and **EK REAL ESTATE**'s assured **NELSON** that he could "release" a portion of the equity in his Property while maintaining an equity interest in his home and keeping possession of his home indefinitely.  They further represented to **NELSON** that he could either repay the "loan" and gain back the secured portion of the equity in his homestead Property or sell the Property during his lease and "unlock" his additional retained equity in his homestead Property.   **NELSON** understood from these communications that **EASYKNOCK'S** program would operate as a loan secured by equivalent equity in his Property.   **EASYKNOCK** proposed cashing out only a portion of his equity in the Property (about 65% of his Property's value), not the full value of the home. **EASYKNOCK** told him that he could pay off the amount **EASYKNOCK** funded in exchange for a release of **EASYKNOCK'S** secured interest in that portion of the equity of his Property. In the interim, **NELSON** was told he would continue to live in his home and make monthly payments to **EASYKNOCK** just like he would for any traditional home equity loan. **NELSON** only ever intended the transaction to be a home equity loan, not a complete sale of his rights and interest in his homestead.

14.     **EASYKNOCK'S** solicitations included the term "Equity Release," the payment of what **EASYKNOCK** described as its "initial installment" payment for the approximately 65% equity cash out, and they referred to **NELSON'S** "remaining value of his equity" when referencing his retained equity of approximately 35% in his Property.   Based on **EASYKNOCK'S**

representations about the transaction, it was clear that Defendants **EK REAL ESTATE** and **EASYKNOCK** recognized that the transaction made the basis of this suit was a "loan" based on a secured portion of **NELSON's** equity in his Property and that they were acting as "lenders."

15.     None of Defendants **CENTER STREET, EASYKNOCK,** or **EK REAL ESTATE** is a qualified lender in Texas with the Texas Office of Consumer Credit Commission (the "OCCC").

16.     Despite not being a qualified lender in Texas at the time of the "Sale-Leaseback" transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE** represented to **NELSON** that transaction was a "home equity loan."

17.     At the time of these transactions, **EASYKNOCK** and **EK REAL ESTATE** were not even registered to conduct any type of business in Texas—despite them regularly doing so.

18.     To induce **NELSON** to close on their "Sale-Leaseback" loan transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE** told **NELSON** that they could give him the money quickly, and whenever he was ready to get another home loan, he could pay off or purchase back **EASYKNOCK's** secured equity interest in the Property at any time.  The representatives of **EASYKNOCK** and **EK REAL ESTATE** kept reiterating that **NELSON** would still have plenty of equity left in his homestead Property. **EASYKNOCK** further represented that there would be no need for a credit check or income verification to close on their loan transaction.  Nevertheless, on October 25, 2018, Thomas Mackie, a representative of **EASYKNOCK**, emailed **NELSON** to request bank statements and a credit check "not as a condition to qualify but just to make sure we are providing a transaction that will be good for both you and us."  Mr. Mackie stated that this type of information would be good for **EASYKNOCK's** "underwriter" to see so his transaction can be approved.

19.     At the time of the proposed transaction, **NELSON** was under terrible financial pressure without significant income or any savings.  During their pre-closing calls and emails to **NELSON**, **EASYKNOCK** and **EK REAL ESTATE** represented that they would fund an initial installment of $97,500 at the closing of their loan transaction in exchange for a secured interest in 65% of **NELSON's** Property; **NELSON** would receive $91,500 in cash at closing; **NELSON** could live at the Property indefinitely; **NELSON** could pay off their loan at any time; **NELSON** would maintain at least a 35% share of the equity in his Property; and **NELSON's** remaining equity interest in his property was worth at least $52,500, which he could expect to receive if he ever decided to sell his Property.

20.     Based on **EASYKNOCK** and **EK REAL ESTATE's** representations about the transaction, including its operation as a home equity loan, **NELSON** reluctantly agreed to proceed with Defendants **EASYKNOCK** and **EK REAL ESTATE**'s proposed transaction.  On or about June 28, 2018, **NELSON** closed on the transaction.  At closing, **NELSON** unwittingly ended up deeding his entire interest in the Property, and not just a 65% secured interest, to Defendant **EK REAL ESTATE**. *(See Exhibit "B" – General Warranty Deed with Vendor's Lien which is attached hereto and incorporated herein for all purposes.)*  The Warranty Deed contained a Vendor's Lien in favor of Defendant **CENTER STREET**, who apparently had loaned to **EK REAL ESTATE** the sum of $100,000.00 to facilitate the "Sale-Leaseback" loan transaction for the Property.  Upon information and belief, Defendant **EK REAL ESTATE** further executed a *Note, Deed of Trust, Commercial Security Agreement and Assignment of Rents* in favor of Defendant **CENTER STREET**.

21.     Defendant **CENTER STREET** advertises itself as a lender in the following states and districts throughout the United States: Arizona, California, Colorado, D.C., Florida, Georgia,

8

Maryland, North Carolina, Oregon, Tennessee, Texas, Virginia, and Washington.  As an experienced lender across the country (and, purportedly, in Texas), **CENTER STREET** is or should be familiar with the requirements and restrictions imposed on mortgage lenders under federal and Texas law, including those found in the Truth in Lending Act, the Texas Finance Code, and the Texas Property Code.

22.     Defendant **CENTER STREET** either did know or should have known that Defendants **EASYKNOCK** and **EK REAL ESTATE**'s "Sale-Leaseback" loan transaction on a homestead property with **NELSON** and tens (if not hundreds) of other Texas citizens failed to comply with these requirements and restrictions.  Nevertheless, Defendant **CENTER STREET** facilitated and enabled Defendants **EASYKNOCK** and **EK REAL ESTATE**'s scheme by providing funding for what they knew or should have known (based on the HUD Statement alone) is an improper loan transaction on a homestead property in Texas.

23.     As a further part of these transactions, **NELSON** entered into a *Lease with Tenant Option Agreement* with Defendant, **EK REAL ESTATE**. *(See Exhibit "C" – Lease with Tenant Option Agreement which is attached hereto and incorporated herein for all purposes.)*  The Lease was for an initial period of twelve (12) months at a rental rate of $15,000.00 for the year ($1,250.00 per month) and a security deposit of $2,500.00.

24.     The Lease was renewable for consecutive one-year terms and could be renewed seemingly indefinitely.  If certain conditions were met, **NELSON** could pay off the loan by "repurchasing" the supposed 65% secured interest in his Property.  To do so, however, **NELSON** would have to tender a payment of $100,000.00, which amount escalated on an annual basis (at a rate equal to no less than 102.5% of the prior year's amount), plus all closing costs (including, but not limited to, broker's commissions, transfer taxes, attorneys' fees, and filing fees) paid by

9

Defendant **EK REAL ESTATE**.  In the interim, **NELSON** was responsible for paying all Rent and Additional Rent due Defendant **EK REAL ESTATE** under the Lease.

25.     For the "right" to enter into a Lease for his Property—potentially, in perpetuity—**EK REAL ESTATE** charged **NELSON** $52,500.00, an amount which was deducted from the $150,000.00 alleged "Contract Sales Price."  This represented more than 1/3 of the total stated purchase price.  In addition to this $52,500.00 Lease charge, **NELSON** was charged monthly base rent of $15,000.00 per year the first year of the Lease term, an amount which also escalated in every consecutive one-year term of the Lease.  After the "Sale-Leaseback" loan transaction, **NELSON** remained solely responsible for all repairs and maintenance on the Property.  If Defendant **EK REAL ESTATE** paid for any repairs or maintenance, **NELSON**, as the Tenant was responsible for reimbursement to Defendant **EK REAL ESTATE** as "Additional Rent".

26.     The rent Defendants **EASYKNOCK** and **EK REAL ESTATE** charged **NELSON** greatly exceeded the rental rates in Fort Bend County, Texas for similar properties.  In addition to the $52,500 charge to lease the Property, as described above, Defendants **EASYKNOCK** and **EK REAL ESTATE** charged **NELSON** monthly rent.  Defendants **EASYKNOCK** and **EK REAL ESTATE** use a set formula (and not market rates) to determine the monthly rent charged to victims of their wrongful "Sale-Leaseback" loan scheme, like Plaintiff **NELSON**.  This monthly rent amount roughly equals approximately 0.75% of the equity amount **CENTER STREET** provided **EASYKNOCK** and **EK REAL ESTATE** at close (9% interest per year) *plus* prorated taxes and insurance for the Property.  Thus, the monthly and other "rent" charges to **EASYKNOCK** and **EK REAL ESTATE** were not designed based on market rates for leasing properties like **NELSON's**.  Rather, their monthly payment termed "rent" consisted of every amount that this transaction would cost **EASYKNOCK** and **EK REAL ESTATE** on a monthly basis: monthly insurance, monthly

property taxes, and monthly interest on **CENTER STREET's** loan to **EASYKNOCK** and **EK REAL ESTATE**.  And **EASYKNOCK** and **EK REAL ESTATE** took security on the front end of this transaction in the form of **NELSON's** entire equity value in his home, rather than just the value of the equity needed to secure the amount funded.  **EASYKNOCK** and **EK REAL ESTATE** did this surreptitiously to ensure that its transaction costs would always be covered by **NELSON's** alleged retained equity in the Property, not just the equity covered by its home equity loan funding.

27.     All invoices for the rent, past due rent, and other charges came from Defendant **EASYKNOCK.**

28.     Defendants never asked for, nor did they ever receive, a waiver of homestead from **NELSON** in the "Sale-Leaseback" loan transaction.

29.     Upon information and belief, **EK REAL ESTATE** and **EASYKNOCK** obtained an appraisal to justify the $150,000.00 value ascribed to **NELSON's** Property.

30.     **NELSON** owned his homestead Property free and clear of all liens at the time of the Sale-Leaseback transaction.

31.     Despite having at least $150,000.00 in equity in his Property at closing, **NELSON** received only $82,787.85 in cash out of the listed $150,000.00 "Contract Sales Price."  In addition to outrageous closing costs burdened upon **NELSON** by Defendants, on the Settlement Statement, Defendants **EK REAL ESTATE** and **EASYKNOCK** deducted a charge of $52,500.00 as a "Tenant Lease Option" from **NELSON's** remaining equity in the Property.  *(See Exhibit "D" – HUD – Settlement Statement which is attached hereto and incorporated herein for all purposes.)*

32.     As per this HUD Settlement Statement, **NELSON** received a total value of $87,953.84 for his at least $150,000.00 in equity in his Property.  This total value consisted of the

payment of $82,787.85 to **NELSON** in cash, the payment of $4,945.74 in taxes tied to the Property, and the payment of $220.25 in homeowner's association dues for the Property.   In essence, Defendants stole **NELSON's** property worth at least $150,000.00 for a total of only about $87,953.84 in value to **NELSON** at closing.

33.     If this had been a real arms-length sale transaction, in exchange for the Deed to the entirety of his Property, **NELSON** should have received the balance of the $150,000 alleged purchase price, $67,212.15, in cash (less reasonable closing costs). He did not receive these funds.

34.     Alternatively, if this transaction had been a traditional home equity loan, **NELSON** should have retained an approximately 35% equity interest in his Property free and clear of any liens.   Despite the disparity between the Contract Sales Price and the total value he received at closing, **NELSON** did not retain any equity in his Property.   Instead, at closing, Defendants **EK REAL ESTATE** and **EASYKNOCK** charged **NELSON** several bogus amounts to make it seem as if he received the full $150,000 purchase price value in exchange for the deed to the entirety of his Property.

35.     Pursuant to the "Sale-Leaseback" scheme, Defendants **EK REAL ESTATE** and **EASYKNOCK** charged **NELSON** $52,500.00 for payment toward the Lease cost. This amount was deducted from the Contract Sales Price on the parties' HUD Settlement Statement.   At the same time, Defendants **EK REAL ESTATE** and **EASYKNOCK** strapped **NELSON** to rental payments of $15,000.00 for the first twelve months of a lease, a rental amount which escalated over each consecutive one-year period before **NELSON** had the opportunity to pay off the loan and "purchase" back the equity in his Property for the sum of $100,000.00 (which also escalated on an annual basis), *plus* all amounts paid by **EK REAL ESTATE** at closing.   **NELSON** was also responsible for Defendant **EK REAL ESTATE's** inflated closing costs and any other Rents

12

or Additional Rents that were due, should he later decide to pay off the loan or sell the rest of his

equity in his Property.

36.     No disclosures were provided to **NELSON** by either Defendants **EASYKNOCK**

or **EK REAL ESTATE** pursuant to the Truth-In-Lending Act or the Texas Finance Code, which

require the following disclosures, among others, be given **NELSON** before he entered into this

transaction:

        a.   Full disclosure of loan costs and terms;

        b.   The right of rescission;

        c.   Disclosing to the borrower when mortgage was reassigned;

        d.   Disclosure of the caps on high mortgage costs; and

        e.   Assessing whether the borrower had the ability to repay the loan prior
            to entering into the transaction with the borrower.

37.     Indeed, neither **EASYKNOCK** nor **EK REAL ESTATE** (nor **CENTER**

**STREET**) conducted any substantive assessment of **NELSON**'s financial ability to repay the

"loan" or to pay the monthly rent, Additional rent, or other amounts due under the Lease.

Defendants **EK REAL ESTATE** and **EASYKNOCK** knew that **NELSON** had little income and

that he had essentially no savings prior to entering into the "Sale-Leaseback" loan transaction.

Thus, Defendants knew **NELSON** would be unable to pay the monthly and other Lease payments,

let alone qualify for another loan to regain title to his residential homestead Property.

38.     **NELSON** fell behind on Rent in or about February 2021. **NELSON** was being

threatened with legal proceedings for what he believed to be his homestead.  All past due rental

notices were being sent to **NELSON** by Defendant **EASYKNOCK**.

39.     On or about February 26, 2021, **EASYKNOCK**, **EK REAL ESTATE** and

**NELSON** entered into an amendment to their prior agreements entitled "Tenant Termination

Option Price Amendment." *(See Exhibit "E" – Tenant Termination Option Price Amendment which is attached hereto and incorporated herein for all purposes.)* Pursuant to this amendment, **NELSON's** Termination Option Price, the amount he needed to pay to satisfy the loan, was increased by $8,587.75.  This was in part the amount of rent due for February 2021.  The remainder was earmarked as a prepayment of rent due for the months of March through August 2021.

## SUIT TO QUIET TITLE TO THE PROPERTY

40.     Plaintiff **NELSON** adopts all preceding paragraphs as if recited verbatim herein.

41.     Plaintiff **NELSON** was the fee simple owner of the Property which was his homestead prior to the sale-leaseback transaction made the subject of this suit.   Section 41.006 of the Texas Property Code, states as follows:

> (a) "Except as provided by Subsection (c), any sale or purported sale in whole or in part of a homestead at a fixed purchase price that is less than the appraised fair market value of the property at the time of the sale or purported sale, and in connection with which the buyer of the property executes a lease of the property to the seller at lease payments which exceed the fair market rental value of the property, is considered to be a loan with all payments made from the seller to the buyer in excess of the sales price considered to be interest subject to Title 4, Finance Code.

> (b) The taking of any deed in connection with a transaction described by this section is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and the deed is void and no lien attaches to the homestead property as a result of the purported sale…".

42.     Although Defendants **EASYKNOCK** and **EK REAL ESTATE** claimed that they were purchasing **NELSON's** property for $150,000 **NELSON** only received the sum of $82,787.85 from those "sales" proceeds ($87,953.84 in total value).  Further, **NELSON** was charged $52,500.00 plus a monthly rental rate (and other charges) in connection with executing a *Lease with Tenant Option* so he could lease back the Property. These charges greatly exceeded the charges for leasing similar properties in Fort Bend County, Texas, especially given the condition

14

the Property was in at the time of the "pretend sale" and leaseback.  Thus, **EASYKNOCK** and **EK REAL ESTATE** "purchased" **NELSON's** property for far less than the appraised market value at the time of the purported sale, and all payments made (and charges debited) from **NELSON** to **EK REAL ESTATE** and **EASYKNOCK** in connection with the leaseback far exceed the fair market rental value of the Property.  For these reasons, the "sale-leaseback" transaction is deemed a loan under the Texas Property Code, all payments made from **NELSON** to **EK REAL ESTATE** and **EASYKNOCK** in excess of the sales price are considered interest subject to the Texas Finance Code, the deed conveyed as part of the transaction is **VOID**, no lien ever legally attached to **NELSON's** homesteaded Property, and the taking of this invalid deed is a deceptive trade practice under Subchapter E, Chapter 17 of the Texas Business and Commerce Code.

43.     At the time of the transaction, Defendant **EK REAL ESTATE** borrowed from Defendant **CENTER STREET** the sum of $100,000.00 and **CENTER STREET** filed a Deed of Trust against Plaintiff **NELSON's** Property.  As a result, Plaintiff **NELSON** seeks to quiet title to the Property voiding the *General Warranty Deed with Vendor's Lien* given to Defendant **EK REAL ESTATE** and the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **CENTER STREET.**  Given that this is an impermissible transaction under §41.006 of the Texas Property Code, **NELSON** requests that the Court find Defendants **EASYKNOCK, EK REAL ESTATE,** and **CENTER STREET** have no interest, legal, equitable or otherwise, to his Property and that Plaintiff **NELSON** is the rightful owner of the Property.

## DECLARATORY JUDGMENT

44.     Plaintiff **NELSON** adopts all preceding paragraphs as if recited verbatim herein.

45.     Plaintiff **NELSON** is entitled to declaratory relief under the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code.  Plaintiff seeks the following declarations:

   (a)   That Defendants **EK REAL ESTATE, EASYKNOCK** and **CENTER STREET** have no rights, title, or ownership interest in the Property;
   (b)   That the General Warranty Deed with Vendor's Lien executed by **NELSON** on June 27, 2018, is void as a matter of law;
   (c)   That the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **CENTER STREET** is void; and
   (d)   That **NELSON** is the rightful owner of the Property.

46.     Plaintiff has retained the law firms of Robin M. Ziek, Pogach PLLC, and Feldman & Feldman, P.C. to represent him in this action and have agreed to pay the foregoing attorneys their reasonable and necessary attorneys' fees.  An award of reasonable and necessary attorneys' fee in the amount of at least $100,000.00 or an amount as determined by the trier of fact to Plaintiff would be equitable and just and it is, therefore, authorized by §37.009 of the Tex. Civ Prac. & Rem. Code.

## VIOLATIONS OF THE TRUTH IN LENDING ACT

47.     Plaintiff **NELSON** adopts all preceding paragraphs as if recited verbatim herein.

48.     Plaintiff **NELSON** is a natural person.

49.     At all times relevant hereto, Defendants **EASYKNOCK** and **EK REAL ESTATE** regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making Defendants a creditor within the meaning of the Truth-In-Lending Act ("TILA"), 15 U.S.C. §1602(g) and Regulation Z §226.2(a)(17).  Under Texas law, a sale-leaseback transaction, like the one at issue

in this case, is a "loan" or "equitable mortgage." *See* Tex. Fin. Code §341.001(9) and (10) and Tex. Prop. Code §41.006.

50.     The transaction in question is a consumer credit transaction within the meaning of TILA, 15 U.S.C. §1602 and Regulation Z §226.2.  The security for the transaction is the primary dwelling of **NELSON**.

51.     Defendants **EASYKNOCK** and **EK REAL ESTATE** did not provide to Plaintiff **NELSON** a Truth In Lending Disclosure statement and as a result violated the requirements of the Truth In Lending Act in the following ways, among others:

<ol type="a">
<li>By failing to provide the required disclosures prior to the consummation of the transaction in violation of 15 U.S.C. §1638(b), §1639, and Regulation Z §226.17(b);</li>

<li>By failing to make the required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. §1632(a), §1639, and Regulation Z §226.17(a);</li>

<li>By failing to include in the finance charges certain charges imposed by Defendants payable by Plaintiff incident to the extension of credit as required by 15 U.S.C. §1605 and Regulation Z §226.18(d);</li>

<li>By failing to calculate and disclose finance charges on the amount financed per 15 U.S.C. §1606and Regulation Z §226.22;</li>

<li>By failing to disclose that **NELSON** had a right of rescission;</li>

<li>By failing to disclose to **NELSON**: "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan," as per 15 U.S.C. §1639; and</li>

<li>By failing to meet the minimum standards for residential mortgage loans per 15 U.S.C. § 1639c, including the ability to repay standards and the prohibition on arbitration agreements in connection with **NELSON**'s principal dwelling.</li>
</ol>

52.     **NELSON** did not discover, and through the exercise of reasonable diligence could not have discovered, the occurrence of Defendants **EK REAL ESTATE** and **EASYKNOCK**'s

violations of TILA until the filing of this suit.  By reason of the aforesaid violations of TILA and

Regulation Z, Defendants are liable to Plaintiff **NELSON** in the amount of twice the finance

charge, actual damages to be established at trial, attorney's fees and costs, and any other amounts

provided for under 15 U.S.C. §1640.

## TEXAS DECEPTIVE TRADE PRACTICES

53.     Plaintiff **NELSON** adopts all preceding paragraphs as if recited verbatim herein.

54.     Plaintiff is a consumer under the Texas Deceptive Trade Practices Act ("DTPA")

because Plaintiff is an individual who sought goods or services by purchase/lease.

55.     Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when

Defendants engaged in false, misleading, or deceptive acts that Plaintiff relied on to Plaintiff's

detriment.  Specifically, Defendants violated the DTPA, among other ways, as follows:

      a.    Representing that an agreement confers or involves rights, remedies, or obligations that it does not or that are prohibited by law.

      b.    Failing to disclose information about goods and services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed.

      c.    Causing confusion or misunderstanding about the source, sponsorship, approval or certification of goods or services by another.

56.     Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when

Defendants engaged in an unconscionable action or course of action that, to Plaintiff's detriment,

took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair

degree.  Specifically, Defendants **EK REAL ESTATE** and **EASYKNOCK** induced Plaintiff

**NELSON** to enter into a prohibited "loan" transaction on his homestead knowing that neither

Defendant was qualified as lenders with the Texas Office of Consumer Credit Commission to lend against Plaintiff **NELSON**'s homestead.  Defendants **EK REAL ESTATE** and **EASYKNOCK** knew or should have known that **NELSON** did not have the ability to pay back the loan on the onerous lending terms and rates and at charges that exceeded the maximum rates allowed by law.

57.     Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in false, misleading, or deceptive acts or practices that Plaintiff relied upon to Plaintiff's detriment and that violated a "tie-in" consumer statute, specifically §41.006 of the Texas Property Code, when Defendants induced Plaintiff **NELSON** into entering into a "Sale-leaseback" transaction on his homestead.  Furthermore, the marketing materials and correspondence sent to Plaintiff **NELSON** by Defendant **EASYKNOCK** concerning the transaction referred to, among other things, "accessing" and "releasing" the "equity" in his home and **EASYKNOCK's** "underwriter"; thus, Defendants purposefully confused this type of transaction with a home equity or mortgage loan.

58.      **NELSON** did not discover, and through the exercise of reasonable diligence could not have discovered, the occurrence of Defendants **EK REAL ESTATE** and **EASYKNOCK**'s false, misleading, and deceptive acts and practices until the filing of this suit.

59.     It was impracticable for Plaintiff **NELSON** to give Defendants **EASYKNOCK** and **EK REAL ESTATE** pre-suit written notice under the Texas Business & Commerce, §17.505(a) ("DTPA") because Plaintiff is nearing the end of his limitations period on his claim. Therefore, pre-suit written notice was not required.

60.     Defendants' wrongful conduct was a producing cause of Plaintiff's injuries which resulted in the following damages:

        a.     Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court;

19

b.     Defendants acted knowingly and intentionally which entitled Plaintiff to recover mental-anguish damages under the Texas Business & Commerce Code, §17.50(b)(1) in an amount to be determined by the trier of fact;

c.     Defendants acted knowingly and intentionally which entitles Plaintiff to recover treble economic and mental anguish damages under the Texas Business & Commerce Code, §17.50(b)(1); and

d.     Plaintiff is entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under Texas Business & Commerce Code, §17.50(d) in an amount to be determined by the trier of fact.

## <u>USURY UNDER THE TEXAS FINANCE CODE</u>

61.    Plaintiff **NELSON** adopts all preceding paragraphs as if recited verbatim herein.

62.    On or about June 27, 2018, Defendants **EK REAL ESTATE** and **EASYKNOCK** loaned money to Plaintiff **NELSON** disguised as a "Sale-Leaseback" loan transaction. The loan between **NELSON** and Defendants **EASYKNOCK** and **EK REAL ESTATE**, in which **CENTER STREET** participated, only provided **NELSON** with $82,787.85 in cash.  Defendants **EK REAL ESTATE** and **EASYKNOCK** had the Property appraised to look like a $150,000.00 sale to them from **NELSON**.  From a purported sale of the Property for the sum of $150,000.00, Plaintiff received a total value of $87,953.84.  Disguised as a Tenant Lease Option on the HUD form, Defendants **EK REAL ESTATE** and **EASYKNOCK** took a $52,500.00 fee and other fees against the sales price.

63.    Plaintiff **NELSON** had an obligation to repay the principal amount of Defendants' loan as seen in the option to repurchase the Property.

64.    Defendants **EK REAL ESTATE** and **EASYKNOCK** contracted for and received interest that exceeded the maximum amount allowed by law by charging excessive fees including without limitation to the following:

    a.      Tenant Lease Option - $52,500.00;

    b.      Processing Fees of $4,500.00;

    c.      Lease Payments of $15,000.00 in the first year;

    d.      Lease Payments of at least $15,375.00 in the second year;

    e.      Lease Payments of at least $ 15,759.38 in the third year;

    f.      The difference between the amount received by Plaintiff for (or were satisfied by) the loan of $87,953.84 and the repayment option of $100,000.00, if repurchased within the first twelve months, at least $102,500.00 if repurchased within twenty-four months and at least $105,062.50 if repurchased within thirty-six months (these amounts do not include the $8,587.75 added to the repayment option in February 2021) plus closing costs and rents; and

    g.      Excessive closing costs.

65.    Defendants' unlawful conduct caused injury to Plaintiff **NELSON** which resulted in the following damages:

    a.      Statutory Penalties; and

    b.      Attorney's fees.

66.    Plaintiff **NELSON** seeks unliquidated damages within the jurisdictional limits of this Court.

67.    Plaintiff **NELSON** is entitled to recover statutory penalties under Texas Finance Code, §305.001(a), that being the greater of the following:

    a.      Three times the amount by which the interest contracted for, charged, or received exceeds the maximum amount of interest allowed by the usury statute; or

    b.      $2,000.00 or 20% of the principal, whichever is less.

68.    In addition, since the interest charged and received under this contract exceeded twice the amount allowed by law, Plaintiff **NELSON** is seeking the forfeiture of all principal, interest and other amounts charged and received pursuant to Tex. Fin. Code §305.002.

69.    Plaintiff **NELSON** is further entitled to recover reasonable attorney's fees under Texas Finance Code §349.001 against Defendants **EK REAL ESTATE** and **EASYKNOCK**.

Plaintiff has hired the undersigned attorneys to represent his interests in this matter and have agreed to pay the attorneys a reasonable rate for their services.  Plaintiff **NELSON** seeks to recover his reasonable and necessary attorney's fees from Defendants, jointly and severally, in this matter in an amount as determined by the trier of fact.

## ADDITIONAL VIOLATIONS OF TEXAS FINANCE CODE GOVERNING LOANS AND FINANCED TRANSACTIONS §§ 341.011– 354.007, *et seq.*

70.     Plaintiff **NELSON** adopts all preceding paragraphs as if recited verbatim herein.

71.     At all times relevant hereto, **NELSON** is considered an "obligor" under the Texas Finance Code and Defendants **EASYKNOCK** and **EK REAL ESTATE**'s "Sale-Leaseback transaction is a "loan" under the Texas Finance Code and Texas Property Code.  *See* Tex. Fin. Code §341.001(9) and (10); *see also* Tex. Prop. Code §41.006.  This loan transaction was subject to the requirements of Texas Finance Code §342.001, *et. seq.* (Consumer Loans), and §343.001, *et seq.* (Home Loans).

72.     In connection with the loan transaction at issue in this case, Defendants **EASYKNOCK** and **EK REAL ESTATE** violated the Texas Finance Code, among other ways, by:

a.     engaging in the business of making, transacting, or negotiating loans subject to this chapter without holding a license issued under this chapter, Tex. Fin. Code § 342.051;

b.     failing to make required disclosures, Tex. Fin. Code § 343.102;

c.     failing to provide required notices, Tex. Fin. Code § 343.105; and

d.     engaging in a pattern or practice of extending credit to consumers under high-cost home loans based on the consumers' collateral without regard to the obligor's repayment ability, including the obligor's current and expected income, current obligations, employment status, and other financial resources, other than the obligor's equity in the dwelling that secures repayment of the loan, Tex. Fin. Code § 343.204;

73.     For violating these additional provisions of the Texas Finance Code, pursuant to Tex. Fin. Code. § 349.003, Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to **NELSON** for (1) three times the actual economic loss to **NELSON** that resulted from each violation; or, alternatively, (2) since each violation was material and induced **NELSON** to enter into a transaction that he would not have entered if the violation had not occurred, twice the interest or time price differential contracted for, charged, or received, not to exceed $4,000 because the amount financed exceeds $5,000.  Defendants are also liable for **NELSON**'s reasonable attorney's fees in an amount to be determined by this Court

## COMMON LAW AND STATUTORY FRAUD

74.     Plaintiff **NELSON** adopts all preceding paragraphs as if recited verbatim herein.

75.     Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to Plaintiffs for common law fraud, fraud by nondisclosure, fraudulent inducement, and, pursuant to Tex. Bus. & Com. Code § 27.01, statutory fraud.

76.     Specifically, as described throughout this Complaint:

   a. The Sale-Leaseback loan transaction is a transaction that involves real property in Texas, namely the Property.

   b. Defendants **EASYKNOCK** and **EK REAL ESTATE** made multiple misrepresentations, and they concealed or failed to disclose facts to Plaintiff despite a duty to do so.  Among other things, as described more specifically above, **EASYKNOCK** and **EK REAL ESTATE** falsely and misleadingly represented that they were authorized under Texas law to enter into the loan transaction that is the basis of this suit; the Sale-Leaseback loan transaction was a home equity loan; **NELSON** would receive more than $91,500 in cash at closing; **NELSON** would maintain his 35% interest in the equity of his Property after the Sale-Leaseback loan transaction;

   c. Defendants made additional false, deceptive, and material representations in their marketing materials.  As described above, Defendants' marketing materials described their Sale-Leaseback transaction to **NELSON** as an opportunity to "release" a portion of the

equity in his home; **NELSON** would still have 35% equity in his homestead; **NELSON** could stay in his home as long as he wanted, save on having to pay insurance and taxes while he lived in his home, and move only when he is ready; and if **NELSON** decided to sell the Property, he could choose his own realtor and set his own sale's price for the Property;

d.   Defendants also falsely represented in an email on April 25, 2018, that taxes and insurance on the Property would be Defendants' responsibility.  Unbeknownst to him, Defendants were passing through those charges to him monthly as part of the rent charged for his Property.

e.   Defendants falsely advertise that their process "lets you access funds you need without having to give up your home," that "EasyKnock offers homeowners a sale-leaseback option to get money from their home equity without moving," and that "EasyKnock is a legit company that can be a great help to homeowners in a tight spot."

f.   Defendants made these misrepresentations and concealed/failed to disclose facts to induce Plaintiff to enter into the Sale-Leaseback transaction for his Property.

g.   Defendants knew Plaintiff was unaware of the concealed/undisclosed facts and did not have an equal opportunity to discover these facts. Defendants were deliberately silent when they had a duty to speak about the concealed/undisclosed facts.

h.   The representations and omissions were material and false.

i.   Defendants made these representations or omitted material facts with the intent that Plaintiff rely on the representations or omissions.

j.   Plaintiff relied on these representations and Defendants' nondisclosure.

k.   In relying on these representations and without the knowledge of the undisclosed facts, Plaintiff **NELSON** was injured.

77.   For the common law fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from Defendants **EASYKNOCK** and **EK REAL ESTATE,** his actual damages, exemplary damages, costs of court, and pre-and post-judgment interest.

78.   For his statutory fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from the Defendants **EASYKNOCK** and **EK REAL ESTATE**, his actual damages, and,

pursuant to Tex. Bus. & Com. Code § 27.01(d) and (e), exemplary damages, attorneys' fees, expert witness fees, deposition-copy costs, costs of court, and pre-and post-judgment interest.

## CONSPIRACY

79.     Plaintiff **NELSON** adopts all preceding paragraphs as if recited verbatim herein.

80.     Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **CENTER STREET** are liable to Plaintiff **NELSON** for participating in a conspiracy.

81.     Each of the Defendants was a member of a conspiracy. They conspired to commit acts of fraud and other statutory and common law torts, as described above. In so doing, the Defendants had a meeting of the minds to accomplish the wrongful acts described above, committed one or more acts in furtherance of the conspiracy to commit the unlawful causes of action described above, and caused Plaintiff actual harm as a result of their conspiratorial conduct.

82.     Accordingly, Plaintiff is entitled to recover from each conspirator Plaintiff's actual damages and exemplary damages, as well as for such conspirator's joint and several liability with the other actors concerning each cause of action described above.  In connection, with the statutory torts, **NELSON** is entitled to recover from each conspirator, jointly and severally, his attorneys' fees, expert witness fees, deposition-copy costs, costs of court, and pre-and post-judgment interest.

## AIDING AND ABETTING

83.     Plaintiff **NELSON** adopts all preceding paragraphs as if recited verbatim herein.

84.     Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **CENTER STREET** are liable to Plaintiff **NELSON** for aiding and abetting one or more of the others in the conduct described in this Complaint.

85.     Specifically, as described throughout this Complaint:

     a.   Each Defendant committed torts;

b.   Each Defendant had knowledge that these primary actors' actions constituted torts;

c.   the Defendants had the intent to assist these primary actors in committing the torts;

d.   each of the Defendants gave the primary actors assistance or encouragement; and

e.   the assistance or encouragement provided by the Defendants was a substantial factor in causing the tort.

86.   Alternatively, as described throughout this Complaint:

a.   the primary actors' activity accomplished a tortious result;

b.   each of the Defendants provided substantial assistance to the primary actors in accomplishing the tortious result;

c.   each of the Defendants' own conduct, separate from the primary actors', breached duties owed to Plaintiff; and

d.   the participation of each Defendant was a substantial factor in causing the tort.

87.   Plaintiff is entitled to recover damages from each of the Defendants, jointly and severally, for each cause of action they aided & abetted.

## DECLARATORY JUDGMENT

88.   Plaintiff **NELSON** adopts all preceding paragraphs as if recited verbatim herein.

89.   Plaintiff **NELSON** is entitled to declaratory relief under the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code.  Plaintiff seeks the following declarations:

a.   the Property at issue in this dispute was **NELSON's** residential homestead;

b.   because the Property is **NELSON's** residential homestead, any transaction associated with the Property required compliance with the Texas Property Code, including the restrictions of Tex. Prop. Code § 41.006 (a) and (b);

c.   Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **CENTER STREET's** taking of a deed in connection with the Sale-Leaseback

26

transaction at issue in this case is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code (Tex. Bus. & C. §17.41 *et seq.*);

d.      Defendants' deed in connection with the underlying Sale-Leaseback transaction is void and no lien legally attached to **NELSON's** residential homestead property (the Property) as a result of the purported sale;

e.      The Sale-Leaseback transaction at issue in this case is a "loan" under the Texas Finance Code, *see* Tex. Fin. Code §341.001(9) and (10), and is subject to the requirements of Texas Finance Code §342.001, *et seq.* (Consumer Loans) and §343.001, *et seq.* (Home Loans).

f.      The Tenant Lease Option, Rent, and Additional Rent is considered interest under the Texas Property Code.

90.      Plaintiff has retained the undersigned counsel to represent him in this action and has agreed to pay the foregoing attorneys their reasonable and necessary attorneys' fees.  An award of reasonable and necessary attorneys' fee in an amount as determined by the trier of fact to Plaintiff would be equitable and just and, therefore, authorized by §37.009 of the Tex. Civ Prac. & Rem. Code.

## JURY DEMAND

91.      Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure

## PRAYER

Plaintiff **LEROY NELSON** prays that the Court enter Judgment in favor of **LEROY NELSON** jointly and severally against Defendants **EK REAL ESTATE SERVICES OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **CENTER STREET, INC.**, for the damages as set forth herein and for such other and further relief, at law or in equity, to which he may be justly entitled.

Dated: November 11, 2021.

Respectfully submitted:

By:＿＿＿/s/ Robin Ziek＿＿＿＿＿＿＿＿＿＿＿

Robin Ziek, Attorney at Law
Attorney-In-Charge
State Bar No. 22262575
Federal I.D. No. 8231
24 Greenway Plaza, Suite 2050
Houston, TX 77046
Telephone: (713) 222-8030
Facsimile: (832) 565-9011
rziek@sbcglobal.net

**ATTORNEYS FOR PLAINTIFF
LEROY NELSON**

**OF COUNSEL:**

**POGACH PLLC**

Adam D. Pogach
State Bar No. 24048734
Federal I.D. No. 634567
24 Greenway Plaza, Suite 2050
Houston, TX 77046
Telephone: (713) 524-5400
Facsimile: (713) 524-540
Email: adam@lawdifferent.com

**FELDMAN & FELDMAN, P.C.**

Cris Feldman
State Bar. No.: 24012613
Federal I.D. No. 712459
3355 W. Alabama Street, Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472
Email: cris.feldman@feldman.law